**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| LETITIA RENEE ROBINSON, | Case No. 1:10-cv-924 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff, Letitia Renee Robinson filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On October 18, 2007, Plaintiff filed an application for Supplemental Security Income (SSI), alleging a disability onset date of April 1, 2006 due to both physical and mental impairments. (Tr. 98-103). Plaintiff was born in 1973 and was 33 years old at the time she filed her SSI application. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On March 9, 2010, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 22-46). At the hearing, ALJ Deborah Smith heard testimony

from Plaintiff, and from George Parsons, an impartial vocational expert. On April 29, 2010, the ALJ denied Plaintiff's SSI application in a written decision. (Tr. 9-18).

The ALJ found that Plaintiff completed school through the eighth grade and has never engaged in substantial gainful activity at any time in her life. (Tr. 11). At the hearing, Plaintiff testified that she lives in an apartment with her two youngest children, both of whom receive SSI. (Tr. 26-27). Based upon Plaintiff's testimony, the ALJ found that Plaintiff had the following severe impairments: "drug abuse, personality disorder, bipolar disorder, and posttraumatic stress disorder." (*Id.*).

However, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with only the following nonexertional limitations relating to her mental impairments:

> the claimant is capable of simple and some multi-step routine task instructions without production quotas and where changes are explained. She is capable of superficial intermittent interactions with co-workers and should have limited contact with the general public.

(Tr. 15). Based upon testimony from the vocational expert, and given Plaintiff's age, limited education, lack of work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 17). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 18).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by rejecting the RFC offered by one of the consulting psychologists.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. No Error In Rejection of Consulting Opinion

Plaintiff's sole assertion of error complains that the ALJ improperly gave more weight to the opinion of a non-examining consultant than to the opinion of an examining consultant.[1] Three psychologists completed or affirmed mental RFC forms: 1) Dr. Susan Kenford (Tr. 244-245), 2) Dr. Suzanne Castro (Tr. 267-270), and 3) Dr. Douglas Pawlarczyk. Dr. Kenford completed her RFC form following an examination of Plaintiff in

---

[1] Plaintiff does not challenge the ALJ's findings that Plaintiff has no restrictions in her activities of daily living, that she has no restrictions from physical impairments, and that her subjective complaints were not credible. The ALJ specifically noted Plaintiff's demonstrated lack of motivation to work or to get a GED, her history of drug and alcohol abuse, prostitution, and legal history including the removal of her children due to drug dealing. The ALJ listed additional facts that seriously undermined Plaintiff's credibility, including but not limited to Plaintiff's history of "lying, misrepresenting herself or stealing." (Tr. 16). The ALJ noted that Plaintiff's allegations of mental disability also strained credibility because, although she had no reported income besides her children's SSI, she has been able to get alcohol and drugs on a regular basis. (Tr. 16, 239, 240, 308-09, 315, 370, 391).

January of 2008; the latter two consultants subsequently completed a records review that included Dr. Kenford's report, but did not examine Plaintiff.

Although Plaintiff contends that the ALJ gave "little explanation" as to why she gave controlling weight to the opinions of the non-examining psychologists, versus the opinion of the examining consultant, a review of the ALJ's opinion refutes that contention. The ALJ very clearly articulated why she was giving "little weight" to Dr. Kenford's opinion concerning Plaintiff's mental RFC, or to Dr. Kenford's examination as a whole:

> [Dr. Kenford's assessment] is inconsistent with other records that say nothing regarding multiple personalities. Moreover, even the claimant acknowledged full activities of daily living. ... Dr. Kenford could not obtain many answers and she stated nothing about the claimant's polysubstance abuse and the long periods of time that she went untreated. Dr. Kenford did acknowledge noncompliance with treatment but then did not pursue the issue of polysubstance abuse. Also, many of her conclusions clearly rely on the statements of the claimant concerning her subjective complaints. Some of the claimant's statements were clearly at odds with the facts, as when the claimant stated that she has no friends. It is clear that the claimant has interactions with men, based on her pregnancies and her ability to make contacts to obtain drugs.

(Tr. 16). In contrast to Dr. Kenford's opinions, the ALJ found that Dr. Castro's evaluation was "closely reasoned and based on the entire medical record at the time," including Plaintiff's poor compliance with treatment, very limited work history, history of abuse of her children, and extensive activities of daily living. (Tr. 16, 269-270). Likewise, the ALJ accepted the consulting opinion of Dr. Pawlarczyk, who affirmed Dr. Castro's evaluation with little variance. (Tr. 14, 304).

Plaintiff argues that the ALJ's opinion was internally inconsistent, because the ALJ acknowledged that Dr. Kenford was unable to obtain many answers to her examination questions from Plaintiff, but simultaneously criticized Dr. Kenford for over-relying on

5

Plaintiff's subjective answers. The record reflects that Dr. Kenford characterized Plaintiff as a "limited" historian, and stated that "there were many questions to which [she] was not able to obtain comprehensive or clear answers." (Tr. 244). Merely because Plaintiff did not respond to many questions does not mean that the ALJ committed reversible error by concluding that Dr. Kenford placed too much reliance on the limited subjective answers that Plaintiff chose to provide. On the whole, the record strongly supports the ALJ's rejection of Dr. Kenford's assessment.

As the ALJ noted, Plaintiff's reported daily activities do not reflect any significant restriction. Dr. Kenford noted that Plaintiff was not reliable or fully engaged in treatment (Tr. 239), and that Plaintiff reported that she got her son ready for school, ran errands, grocery shopped, cooked, cleaned and did laundry (Tr. 242-243).

Plaintiff further argues that the ALJ wrongly discounted Dr. Kenford's assessment on grounds that other medical records did not support a finding of multiple personality disorder. Plaintiff notes that during a psychiatric evaluation performed at University Hospital, Plaintiff mentioned that "others" named "Zaire" and "Scar Wicked" are with her at all times (Tr. 260). In addition, Plaintiff mentioned that her "friends" "come out at different stages" in her disability report. (Tr. 153). Finally, on at least one occasion, Plaintiff reported auditory hallucinations (Tr. 316). As Plaintiff concedes, however, even Dr. Kenford acknowledged that she was unable to make a diagnosis of multiple personality disorder due to lack of sufficient evidence (Tr. 243). In fact, no medical source has ever diagnosed Plaintiff with multiple personality disorder, despite her subjective allegations of having multiple personalities. Much of the evidence, including medical records and other evidence relating to Plaintiff's lack of credibility and ability to perform a wide range of daily

6

activities, supports the ALJ's rejection of the diagnosis of multiple personality disorder or any limitations therefrom.

A number of medical records provide substantial evidence to support the ALJ's conclusions that no additional limitation results from any alleged diagnosis of multiple personality disorder, also known as dissociative identity disorder. Just prior to Plaintiff's alleged disability date, in October of 2005, Plaintiff underwent an examination at Central Clinic and did not report either multiple personalities or hallucinations. (Tr. 180). Similarly, Plaintiff did not testify to multiple personalities or hallucinations at any point during the administrative hearing. (Tr. 25-41).

Shortly after being evaluated by Dr. Kenford, Plaintiff began individual therapy at University Hospital with a psychiatrist, Dr. Forrester. (Tr. 260). Despite Plaintiff's report that she had "others" with her at all times, Dr. Forrester observed no other features of dissociative identity disorder (Tr. 260). On a follow-up visit in March 2008, Plaintiff reported that she was doing well, was able to deal with her daily stressors, and was maintaining sobriety by avoiding marijuana and alcohol. (Tr. 294). Plaintiff did not show up for treatment with Dr. Forrester again until August 2008, when she reported that she had discovered she was pregnant and stopped taking her medication. (Tr. 370). Dr. Forrester was very concerned about substance abuse because Plaintiff was very evasive when he attempted to administer a drug test. (*Id.*). However, Dr. Forrester recommended that Plaintiff continue to stay off her medications since she was "doing well" without them and had been off medications for long periods in the past, while doing "OK." (*Id.*).

Plaintiff underwent another psychiatric evaluation after being admitted to University Hospital in November 2008 for induction of labor, following the death of her baby in utero.

(Tr. 337-338). Plaintiff was found to have a normal grief reaction and was given no medication or other treatment. (Tr. 338). Plaintiff was also evaluated by the Hamilton County Mental Health Board in March 2009. During that evaluation, Plaintiff alleged that she heard voices, but only when she was angry (Tr. 307), and admitted alcohol and marijuana abuse. (Tr. 308-309). She was diagnosed with bipolar disorder, post-traumatic stress disorder, alcohol abuse and cannabis abuse. (Tr. 312). The evaluating clinician concluded that Plaintiff's reported auditory hallucinations related to the severity of her (bipolar) mood disorder, as opposed to dissociative disorder. (Tr. 311). In January 2010, Plaintiff was again treated at University Hospital, reporting auditory hallucinations only when she was upset. (Tr. 316).

In sum, Plaintiff's sole assertion of error is without merit. It was not error for the ALJ to reject the opinion of the examining consultant in favor of the opinions of the two non-examining consultant. Both the ALJ's formulation of Plaintiff's RFC and the ALJ's subsequent finding of non-disability are well-supported by substantial evidence in the record presented.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| LETITIA RENEE ROBINSON, | Case No. 1:10-cv-924 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).